(83 South. 849)

No. 23837.

LOUISIANA RY. & NAV. CO. v. RAILROAD COMMISSION OF LOUISIANA.

(Feb. 2, 1920. On Application for Rehearing, March 12, 1920.)

*(Syllabus by Editorial Staff.)*

1. RAILROADS ⊜225—VOLUME OF OUTGOING FREIGHT HELD NOT CRITERION OF PROPRIETY OF COMMISSION'S ORDER REQUIRING MAINTENANCE OF STATION AGENT.

The volume of outgoing freight at a station where a railroad has been required by the Railroad Commission to maintain an agent in charge is not necessarily the criterion to determine whether such requirement is proper.

2. RAILROADS ⊜225—ORDER OF COMMISSION REQUIRING MAINTENANCE OF STATION AGENT UNREASONABLE, IN VIEW OF LIMITED REVENUE.

Order of the Railroad Commission, requiring a railroad to maintain an agent in charge of a station at a point where the total outward traffic revenue for the preceding year was $2,-800.47, while the cost of the agency, with incidentals, would be about $1,700 a year, *held* unreasonable, $1,909.07 of the revenue having been from carload freight, and $891.40 from passengers, neither of which required an agent, while only $95.52 was from less than carload shipments.

3. RAILROADS ⊜225—AGREEMENT TO MAINTAIN STATION MERELY EVIDENCE IN SUIT TO ANNUL COMMISSION'S ORDER, REQUIRING MAINTENANCE OF AGENT.

In suit by a railroad to annul order of the Railroad Commission, requiring it to maintain an agent at a station, the only issue is as to the reasonableness of the order under the circumstances, and a prior agreement of the railroad to maintain a station at the point is merely a circumstance going to show the necessity of there being an agent there; the suit not being to enforce the agreement.

4. RAILROADS ⊜225—ORDER OF COMMISSION REQUIRING MAINTENANCE OF AGENT AT POINT NEAR OTHER AGENT STATIONS UNREASONABLE.

An order of the Railroad Commission, requiring a railroad to maintain an agent at a station only 3½ miles south and 6 miles north of two other agent stations, was unreasonable,

146 LA.—20

in view of the other agent stations; despite its serving the convenience of a good many persons of the neighborhood.

O'Niell, J., dissenting.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Suit by the Louisiana Railway & Navigation Company against the Railroad Commission of Louisiana. From judgment maintaining certain orders of the Commission, plaintiff appeals. Orders annulled.

Laycock & Beale, of Baton Rouge, and Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

W. M. Barrow, Asst. Atty. Gen., for appellee.

PROVOSTY, J. The defendant Railroad Commission has ordered the plaintiff railway company to erect a depot and maintain an agent in charge at Kateland, and to maintain an agent in charge of the depot at Prairieville; and the company asks in this suit that said orders be annulled, as unjustified under the circumstances.

Except across a small tract, the right of way of plaintiff's road through the parish of Grant was secured gratis, largely through the influence of citizens of the neighborhood of Kateland and as the result of their exertions. They held a mass meeting in that interest, and two of them donated three acres of land for station ground. The company agreed with them to maintain a station there, whether with or without an agent is not known—the writing evidencing the agreement being now mislaid or lost—but an agent was in charge for about 15 or 18 months. Thereafter no attention was given to the depot building; and in the course of some 15 years it gradually deteriorated, until in the fall of 1918 "the wind blew it clear over on one side," and the company tore it down, and disposed of the débris. In April, 1918, the

citizens petitioned the defendant commission to order the company to maintain a depot and agent at this point; and the order now sought to be annulled was made in that same month after hearing.

The commission, in making said order, allowed some weight to the said agreement, but based itself mainly upon the local conditions irrespective of said agreement. Kateland is where the public road leading to the public road along Red river intersects the railroad. It is not a village, but six stores are tributary to it, the neighboring country being thickly settled. The nearest stations are Colfax, 5 miles north, and Pineville, 22 miles south. For want of an agent and depot convenience a considerable part of the freight traffic moves elsewhere.

The company is willing to erect a station building, but contends that the needs of the locality do not justify the expense of an agency. It shows that the costs of this agency, with incidentals, would be about $1,700 a year, whereas the total revenue from Kateland for the year 1917 was $2,800.47 (taking into computation only the outward traffic, which alone is to be considered, since the inward traffic is to be credited to the points where it originated); that, for the purpose of the present discussion, the revenue from carload freight is not to be considered, because an agent is not needed for carload freight, and $1,909.07 of said $2,800.47 was from carload freight, and only $95.52 from less than carload shipments, and $891.40 from passengers; that for 1918 the freight revenue was $1,496.41, of which $145.22 was from less than carload shipments, and $1,062.09 from passengers. For passengers an agent is, of course, not needed. The total freight revenue into Kateland for 1917 was $655.57, and the total passenger revenue was $1,291.56; and for 1918 the freight was $1,372.09, and the passenger, $1,764.61, making the totals for passenger and freight, into and from, $4,757.60 for 1917, and $5,695.10 for 1918.

The company shows that every year prior to 1917 it operated at a loss, this loss being $12,302.89 in 1916; that in 1917 it earned, over and above expenses, the interest on its bonds and other items, plus a profit of $44,272.73, but that, although in 1918 there was a substantial increase in revenue, the year ended with a net loss of $263,957.26, and that for the 6 months of 1919 immediately preceding the trial the net loss, despite a large increase in revenue, has been $417,-134.19, the mere operating expenses, exceeding revenues by $43,584.48; leaving such items as interest on current liabilities, taxes, hire of equipment, rents, war taxes, interest on bonds, unprovided for; that for each dollar taken in $1.0259 was expended.

That in this excess of expenses over revenue every station along the road has naturally to bear its proportionate share.

That for 12 no-agent stations along its line the revenue from outgoing freight for 1918 was as follows:

| | |
|---|---:|
| Elm Grove | $14,756 40 |
| Luella | 2,701 47 |
| Whittington | 4,003 76 |
| Richland | 1,539 61 |
| Rexmore | 1,688 81 |
| Irene | 2,813 54 |
| Scotland | 3,122 07 |
| Kleinpeter | 1,473 75 |
| Prairieville ($1,750.07) | 1,879 54 |
| Brittany | 4,057 83 |
| Waldeck | 11,336 37 |
| Kateland | 1,496 41 |

—and that no better reason can be assigned for an agent to be kept at Kateland than at these other stations, since the necessity for an agent is to be determined from the outgoing freight.

[1] While the volume of outgoing freight is not necessarily the criterion for all cases, and might be totally inapplicable to some exceptional cases, it would appear to be as good as any for ordinary cases; and must

be the safest, since it is the one adopted by the railroads.

[2] This showing appears to us to be overwhelming against the reasonableness of the order in question.

[3] It may be well to add that the only issue in this case is as to the reasonableness of the said order under the circumstances of the case, and that therefore the only influence the said agreement to maintain a station can have in the case is as one of the attending circumstances going to show the necessity of there being an agent at that point. The case is not that of a suit to enforce said agreement. Indeed, the defendant commission has not been given jurisdiction for the enforcement of contracts. Moreover, non constat that the said agreement called for an agent, and not merely for a depot. True, an agent was maintained for a time, which would indicate that the understanding was that one should be maintained; but this was soon discontinued, with no protest, apparently, from the inhabitants, and 15 years of apparent acquiescence have since then elapsed. Nothing shows that any marked change has taken place in the situation around Kateland to render an agency station more necessary now than has been the case for the last 15 years; and the very fact of the agency having been discontinued after a trial experience of 18 months would indicate that the need of it could not have been very imperative.

The financial showing made by the company appeals strongly to the judicial mind. Railroads have to operate as economically as possible in times of financial stress like these, and not increase expenses by extending facilities which heretofore have not been found to be indispensable.

[4] Prairieville is the point of intersection of the Jefferson Highway with the plaintiff company's railroad. It is not a village. An agent is maintained at Bullion, 3½ miles north of it, and at Gonzales about 6 miles south. The main reason assigned for the necessity of an agent being maintained there is that the roads to Bullion and Gonzales are bad in rainy seasons; whereas the Jefferson Highway, being graveled, is good at all times. No doubt, the convenience of a good many persons of the neighborhood would be subserved by an agency at this point, but these persons are not so numerous or the traffic so great as to require an agency to be maintained so close to the other already existing agent station in both directions.

The judgment appealed from, which maintained the said orders, is set aside, and it is now ordered, adjudged and decreed that the said orders, namely, order No. 2274, adopted April 30, 1919, as to Kateland, and No. 2284, adopted June 24, 1919, as to Prairieville, be and are hereby annulled, and that the defendant pay the costs of this suit.

O'NIELL, J., dissents.

On Application for Rehearing.

PER CURIAM. The decree herein is amended in so far as concerns the order No. 2274, adopted April 30, 1919, as to Kateland, so as to annul and set aside said order only in so far as it requires an agency to be maintained at Kateland; and said order is otherwise left in full force and effect.